STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-97-070
DHM- Kev - 6/6/2000

JEFFREY GREENVALL,
Personal Representative of
the Estate of Carla C. Madore,

Plaintiff

v.

MAINE MUTUAL FIRE
INSURANCE COMPANY,

Defendant

DECISION AND ORDER

This is a wrongful death action brought on a claim for underinsured motorist coverage. The jury returned a verdict form finding the other driver negligent and that the decedent suffered conscious pain and suffering as a consequence of the motor vehicle accident. By answers to its interrogatories on the verdict form, the jury awarded plaintiff $50,000 damages for conscious pain and suffering, $150,000 for loss of comfort, society, and companionship, and $50,000 pecuniary loss suffered by the heirs of the decedent.

The decedent was killed on February 11, 1995. On that date, 18-A M.R.S.A. § 2-804 , the Wrongful Death Statute, provided maximum recoverable damages for the loss of "comfort, society, and companionship" at $75,000. On July 7, 1995, the personal representative served a 14 M.R.S.A. § 1602 Notice of Claim on the defendant. On or about January 5, 1996, the personal representative settled the estate's tort claim against the other driver and issued a release therefor for payment of $100,000. On March 29, 1996, the Legislature amended the Wrongful Death Statute to increase the maximum amount recoverable for the loss of comfort, society, and companionship to $150,000.

This change was effective July 4, 1996. On April 4, 1997, nine months after the statutory change, the personal representative executed the complaint which was subsequently served on the defendant and filed with the court.

The defendant argues that the increase of the statutory maximum from $75,000 to $150,000 subsequent to the death but prior to the initiation of the lawsuit does not affect the verdict in this case. Defendant argues that "It is well settled that the law in effect at the time of the execution of a contract becomes part of that contract." *Portland Savings Bank v. Landry*, 372 A.2d 573 (Me. 1977). "Substantive rights of the parties affixed the date upon which the cause of action accrued." *Batchelder v. Tweedie*, 294 A.2d 443 (Me. 1972).

Plaintiff argues that the increase in the statutory limitation is a procedural matter, effective on claims initiated subsequent to the statutory amendment regardless of the date of the death and that the increased statutory cap should apply in this case. Plaintiff cites *Feighery v. York Hospital*, 38 F.Supp. 3rd 142 (D.Me. 1999) and *Roy v. Soucy*, Somerset Cty. Super. Ct., Docket No. CV-96-148. Because *Roy v. Soucy* was decided by this court, noting that "neither party has cited any law in support of their position as to whether $150,000 or $75,000 is the maximum judgment that may be rendered in a wrongful death action in this case" , and because this matter has been fully briefed by the parties in the instant case, this court provides this written explanation of its judgment in this matter.

As with most American jurisdictions, in 1891 Maine joined Britain in enacting a Wrongful Death Statute. Under the common law, a person's death action dies with him. *The Devona*, 1 F.2d 482 (D.Me. 1924); *Chase v. Inhabitants of Litchfield*, 134 Me. 122, 182 A. 921 (1936). "The statute of 1891 c.124, giving the right of action from the death of

2

a person 'caused by the wrongful act, neglect or default' of another is to be construed as a new statute creating a new right and not as affirming or reviving an ancient right." *McKay v. New England Dredging Co.*, 43 A 29, 92 Me. 454 (1899).

Courts have long struggled with the problem of when a statute or amendment should be applied retrospectively. The source of this confusion has often been the use of the procedural/substantive dichotomy. The courts have "sometimes applied a presumption that procedural or remedial enactments are presumed to apply retroactively and that statutes affecting substantive rights are presumed to apply only prospectively." *Sinclair v. Sinclair*, 654 A.2d 438, 439 (Me. 1995). Our Law Court, as well as many legal scholars and other state courts, has brought into doubt the usefulness of this analytical tool. *Id.* at 439-440. Referring to the "elusive distinction between substance and procedure," the court observed that "[a]pplying a label foretells the result but does not materially contribute to a principled decision." *Id.*[1] This sentiment was earlier expressed in *Langley v. Home Indemnity Company*, 272 A.2d 740 (Me. 1971). The court took the position that labeling a statute as "remedial" provides little meaningful assistance. *Id.* at 745. "The classification of statutes as 'remedial' in a manner so comprehensive...erects a foundation far too extensive upon which to establish a principle which allows retrospective statutory scope and application." *Id.* at 745-46. Both *Sinclair* and *Langley* instead relied on the "long and firmly established principle of statutory interpretation that: 'A statute shall not have retrospective operation unless its terms are so strong, clear, and imperative that no other meaning

---

[1] The Law Court acknowledged that its own struggle with these concepts has "not always resulted in clearly defined pathways." *Sinclair*, 654 A.2d at 439 (*citing Riley v. Bath Iron Works Corp.*, 639 A.2d 626 (Me. 1994); *Danforth v. L.L. Bean, Inc.*, 624 A.2d 1231 (Me. 1993); *Schlear v. Fiber Materials, Inc.*, 574 A.2d 876 (Me. 1990), among others.

can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied...." *Id.* at 746-747 (*quoting In re Guilford Water Company*, 118 Me. 367, 375, 108 A. 446, 451 (1919)).

In a dissenting opinion with whom Justice Dana joined, Justice Lipez noted that the substantive/procedural analysis should not be used in a contract case to determine whether a statute applies retroactively or prospectively. *Sinclair*, 654 A.2d at 441.[2] Instead, three questions ought to be asked. First, whether the statute was enacted before or after the contract was executed. Second, if after, whether the Legislature intended that the statute apply retroactively. Third, if the Legislature so intended, whether the statute works an unconstitutional impairment of contract. *Id.* The dissenters noted that the procedural/substantive dichotomy was still useful if, and when the court reached the constitutional issue of impairment of contracts. *Id.* at n.1. The emphasis of the dissenting opinion, however, was on the fundamental rule of statutory construction that statutes are presumed to have a prospective application unless a legislative intent to the contrary "is clearly expressed or necessarily implied in the language used." *Id.* (*quoting Miller v. Fallon*, 134 Me. 145, 148, 183 A. 416, 417 (1936)). The Legislature must express that intent in "strong, clear and imperative language." *Id.* (*quoting Terry v. St. Regis Paper*, 459 A.2d 1106, 1109 (Me. 1983).

The Legislature amended 18-A M.R.S.A. § 2-804(b) on March 29, 1996 to increase the amount recoverable for loss of comfort, society, and companionship of the

---

[2] Whether or not this case is properly viewed as one sounding in contract, the analysis is useful for a clearer understanding when the procedural/substantive dichotomy may be helpful in construing the retroactive or prospective effect that should be given a statute.

deceased from $75,000 to $150,000.[3] Employing the foregoing development in case law, which suggests, at best, that the procedural/substantive analysis be given a very limited role, the court addresses the temporal effect that should be given to that amendment.

It is undisputed that this amendment was passed after the cause of action accrued.[4] Finding equally unhelpful to a principled decision a declaration by this court that this amendment is procedural or substantive, as did the court in *Sinclair*, the court turns to the rule of statutory construction that presumes a statute will have a prospective application unless the Legislature clearly expressed a contrary intent. *Miller*, 183 A. at 417. This requirement reasonably assumes that the Legislature is capable of making clear its intent that a statute be applied retroactively. The Maine Legislative Drafting Manual warns that courts generally will not give a law retroactive application unless the intent of the Legislature to make it retroactive is clear and unambiguous. *See* Legislative Council Maine Drafting Manual, at Pt. II, p. 14 (1st ed. 1990) (quoted in *Sinclair* 654 A.2d at 442). While it would be helpful to the courts, an intention of retroactive application does not always have to be stated explicitly but "it must always be expressed clearly." *Sinclair*, 654 A.2d at 442. As the commentators have noticed, the "Amendment [increasing damages recoverable in a wrongful death action for loss of comfort, society, companionship from $75,000 to $150,000] is silent on the issue of retroactivity...." Simmons, et al. Maine Tort Law, § 19.06, p. 685 n.145 (1999). This court agrees. There is no expression whatever, much less the "strong,

---

[3] Effective July 4, 1996.

[4] Neither was there an action or proceeding pending at the time of passage that would otherwise make 1 M.R.S.A. § 302 necessary to the analysis.

5

clear, and imperative language," that our courts have required, that the amendment is to be retroactively applied. *St. Regis Paper*, 459 A.2d at 1109.[5] Therefore, the amendment is to be given prospective effect.

The same conclusion can be reached under the procedural/substantive analysis. The Supreme Court has stated that the *"extent of a party's liability*, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored." *Landgraf v. USI Film Products*, 511 U.S. 244, 284, 114 S.Ct. 1483, 1507 (1994) (emphasis supplied). The Court went on to explain that when Congress had not clearly spoken, it had never read a statute "substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." *Id.* at 1507. The Court further observed that the state courts "have consistently held that statutes changing or abolishing limits on the amount of damages available in wrongful-death actions should not, in the absence of clear legislative intent, apply to actions arising before their enactment." *Id.* at n.36. (*citing, e.g., Dempsey v. State*, 451 A.2d 273 (R.I. 1982) ("Every court which has considered the issue...has found that a subsequent change as to the amount or the elements of damage in the wrongful-death statute to be substantive rather than procedural or remedial, and thus any such change must be applied prospectively.")).

Plaintiff argues, with great merit, that the damage limitation to the extent it creates a limit of liability is provided by the limits of the insurance policy, not the statute, and, therefore, the policy is not affected by the statutory change. However, by doubling the amount recoverable for loss of comfort, society, and companionship, the

---

[5] Courts will allow a retrospective application if the statute "would be inoperative other than retrospectively." *Id.* This amendment will not become inoperative if it only has a prospective application.

6

Legislature has substantially increased the monetary liability of a private party. The effect is substantially similar whether the private party is the insurance company or the tortfeasor. The insurance company's risk is directly related to the premiums it charges an insured. As such, a substantial increase in monetary liability, if it was given a retroactive effect, would considerably alter the expectations agreed to by the parties at the time the policy was executed. To maintain that such a change is only procedural "would be to lose focus upon reality in the obscurity of semantic fog." *Langley*, 272 A.2d at 746. This conclusion is supported by the holdings of many state courts which have dealt with similar if not identical issues as the one presented to this court. *See Landgraf*, 511 U.S. at 284., n.36.

We have defined substantive legislation as that which "radically affects[s] rights and obligations" of the parties. *Schlear v. Fibert Materials, Inc.*, 574 A.2d 876, 878 (Me. 1990) (citations omitted).

It is not unusual for the Legislature to modify the requirements and limitations of a common law cause of action. However, it is somewhat unusual when the Legislature creates a new cause of action completely replacing the common law. When such takes place, each element of the statutory enactment becomes an element of the cause of action and thereby a part of its existence. As in workers' compensation law, the Wrongful Death Statute creates a new and totally different cause of action replacing common law. As such, the scope and extent of the liability created is expressly stated as described in *McKay*, 92 Me. at 458. "The right to *any* compensation is wholly created by the statute, and the amount of the compensation is to be measured solely by the standard prescribed by the statute." (Emphasis supplied). It is to be noted that at the time of the *McKay* decision, January of 1899, the statute did not allow punitive damages

7

nor any damages for conscious pain and suffering or for loss of companionship or society. Damages were limited to the pecuniary effect upon beneficiaries from the death. Consequently, there can be no doubt but that the limitation of recovery is a substantive part of the Wrongful Death Statute.

For all the foregoing reasons, the entry will be:

This action came on for trial before the Court and a jury with the Honorable Justice Donald H. Marden presiding, and the issues having been duly tried and the jury on February 28, 2001, having rendered a verdict for the plaintiff; it is ORDERED and ADJUDGED that judgment be entered for the plaintiff in the amount of $50,000 for the conscious pain and suffering of Carla Madore, $75,000 for the loss of comfort, society, and companionship of Carla Madore, $50,000 for the pecuniary loss suffered by Kimberly Jackson and Carla Noyes as a result of the death of Carla Madore; pursuant to an agreement between the parties reached prior to trial, the prevailing party shall recover $4,939 in funeral expenses, and $1,015.25 in medical expenses (satisfaction of judgment for funeral expenses of $4,939 is noted); under the provisions of 24-A M.R.S.A. § 2902, plaintiff's total recovery shall be reduced by $100,000 which represents recovery plaintiff obtained from the tortfeasor in this matter; judgment is thereby rendered to plaintiff in the amount of $80,954.25 together with interest and costs as allowed by this court.

Dated: June___6___, 2001

Donald H. Marden
Justice, Superior Court

8

Date Filed _____4/9/97_____ _____Kennebec_____ Docket No. __CV97-070__
                                    County

Action ' __Contract_____        **J. MARDEN**

**Vol. Neutral:**
**David Silk Esq**
**PO Box 7320**
**Portland Maine  04112**


Jerald  E. Greenvall PR Est Carla Madore  vs.  Me. Mutual Fire Ins. Co.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~Severin M. Beliveau Esq.~~ | William J. Kelleher, Esq. |
| ~~PO Box 1058~~ | 7 East Crescent St. |
| ~~Augusta Me. 04332~~ | Augusta Me.  04330 |
| ~~Daniel Rapaport Esq~~ (Greenvall) | |
| ~~PO Box 11410~~    ~~Kevin Beal, Esq.~~ | Kenneth |
| ~~Portland Me. 04104~~ Jeffrey Edwards Esq | ~~KENNEBEC~~ PIERCE ESQ. |
| PO box 9546 | |
| Portland  Me   04112 | |

| Date of Entry | |
|---|---|
| 4/9/97 | Complaint filed.  s/Beliveau,Esq.<br>ADR scheduling statement mailed to Atty. |
| 4/28/97 | Original summons with return service on Me. Mutual Fire Ins. Co.<br>on 4/17/97 filed. |
| 5/9/97 | Answer to complaint filed.  s/Kelleher,Esq. |
| 5/19/97 | Notice of discovery service filed.  s/Kelleher,Esq.<br>Request for admissions propounded to plaintiff served on Severin<br>Beliveau Esq. on 5/7/97. |
| 5/22/97 | Defendant's Motion for Summary Judgment filed.  s/Kelleher, Esq. |
| | Memorandum of Law in Support of Defendant's Motion for Summary Judgment fil<br>s/Kelleher, Esq. |
| | Maine Mutual Fire Insurance Company's Statement of Material Facts filed.<br>s/Kelleher, Esq. |
| | Affidavit of Susan Levesque, with Exhibits attached, filed.  s/Kelleher, Es |
| | Request for Hearing on Motion for Non-Testimonial for ¼ hr. filed.<br>s/Kelleher, Esq. |
| | Proposed Order filed.  s/Kelleher, Esq. |
| 5/30/97 | Notification of Discovery Service filed.  s/Kelleher, Esq.<br>Interrogatories Propounded to the Plaintiff and Request for Production<br>Propounded to the Plaintiff served on Severin Beliveau, Esq., on 5/27/97. |
| 6/2/97 | Pretrial Scheduling Statement and Jury Demand, filed. s/Beal, Esq. |
| 6/10/97 | Plaintiff's Motion for Protection from Defendant's Requests for Admissions,<br>Discovery Requests, and Motion for Summary Judgment and Incorporated Memo-<br>randum of Law, filed. s/Beal, Esq.<br>Proposed Order on Plaintiff's Motion for Protection, filed. |