CITY OF PORTLAND, et al.

v.

**FISHERMAN'S WHARF ASSOCIATES II.**

Supreme Judicial Court of Maine.

Argued March 17, 1988.
Decided April 27, 1988.

---

7. The record does not indicate how the property was zoned under local ordinances.

David A. Lourie (orally), Portland, for City of Portland.

R. John Wuesthoff, Maxine Paul Pouravelis (orally), Portland, for Working Waterfront Coalition.

William Stokes (orally), Asst. Atty. Gen., Augusta, for Intervenor—Dept. of Atty. Gen.

Orlando E. Delogu, pro se.

F. Paul Frinsko (orally), Catherine O'Connor, Bernstein, Shur, Sawyer & Nelson, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The City of Portland, the Attorney General and the Working Waterfront Coalition appeal from a judgment of the Superior Court (Cumberland County), declaring that an initiated ordinance cannot be retroactively applied to a development application that the defendant, Fisherman's Wharf Associates II, filed while the initiated ordinance was pending. The defendant cross-appeals that portion of the judgment that dismissed a number of its counterclaims as moot. We vacate the judgment.

I.

On December 22, 1986, the text of a proposed amendment to the City of Portland's zoning ordinance was filed with the Portland City Clerk together with an originating petition requesting its submission to the voters for adoption. The proposed amendment essentially sought to limit the development of the Portland waterfront to marine related uses. A provision of the amendment, or initiated ordinance, expressly stated that, if enacted, its provisions "shall be applicable to all pending proceedings [sic], applications and petitions commenced after December 22, 1986, which is the date of filing this initiative in the City Clerk's office of the City of Portland."

On February 11, 1987, the defendant, Fisherman's Wharf Associates II ("FWA II"), a Maine general partnership, filed an application for a permit to develop property located on Commercial Street in Portland known as "Fisherman's Wharf." FWA II's predecessor in title, Fisherman's Wharf Associates, had entered into a purchase and sale agreement for the property with Harris Realty Co. on November 21, 1986 and had closed on the purchase on December 29, 1986. FWA II acquired title to the property from Fisherman's Wharf Associates on February 19, 1987. The parties have stipulated that both Fisherman's Wharf Associates and FWA II knew of the contents of the proposed initiated ordinance and its retroactive provisions prior to acquiring title to the property.

On February 26, 1987, the period for obtaining signatures on the originating initiative petition closed, and on March 2, 1987, the City Clerk certified that a sufficient number of signatures had been obtained to place the initiated ordinance on the ballot of the May 5, 1987 city-wide election. The City of Portland accepted FWA II's Application for permit approval and initiated the review and approval process with the knowledge that if the requisite number of signatures were obtained, the initiated ordinance would be voted on in the May 5th election, and that the initiated ordinance, by its terms, would apply to applications filed after December 22, 1986.

The project, as filed and as considered by the City, met the land use requirements of Portland's City Code then in force. It did not, however, meet the requirements of the initiated ordinance.

On April 28, 1987, the Planning Board for the City of Portland granted final approval of FWA II's application for site plan and other approvals subject to certain conditions. On May 5, 1987, the citizens of the City of Portland voted in favor of the initiated ordinance, and on May 7, 1987, the initiated ordinance was declared passed. On June 4, 1987, the building permit for the project was approved and signed by the city building authority, but was not delivered to FWA II pending a determination of the duties of the appropriate city officials.

In a complaint filed on June 4, 1987, the City of Portland, its Director of Planning and Urban Development, and its City Manager sought a declaration of their duties with regard to the issuance of permits to FWA II as well as their right to enforce the initiated ordinance against FWA II. FWA II answered and counterclaimed, asserting that the provisions of 1 M.R.S.A. § 302 (1979) prohibited the application of the initiated ordinance to its project and requesting the court to order the City and its agencies to issue and deliver the building permit (Counts I & II). FWA II also sought to invalidate the initiated ordinance on other grounds, alleging that it violated the Maine Constitution, state statutes, the Comprehensive Plan for the City of Portland, and the Portland Land Use Code (Count III); that it constituted a deprivation of property without due process of law in violation of the Maine and United States Constitutions (Count IV); that it constituted a taking of property without just compensation (Count V); and that it constituted a violation of FWA II's civil rights within the meaning of 42 U.S.C. § 1983 (Count VI).

On July 21, 1987, FWA II filed a motion for preliminary injunction and on August 7, 1987, the City of Portland moved for summary judgment. During this time, the "Working Waterfront Coalition"[1] intervened, and the Attorney General filed a notice of intervention pursuant to 14 M.R. S.A. § 5963 (1980). A hearing on the motions for injunctive relief and summary judgment was held on September 3, 1987.

In an order dated September 10, 1987, the Superior Court ruled that the initiated ordinance did not apply to the pending application filed by FWA II, and that FWA II was entitled to the issuance of the building permit and to the occupancy of the premises when constructed in conformity with the approved plans. Accordingly, as to Counts I and II of FWA II's counterclaim, the court ordered the City of Portland and its agents to issue the building permit as requested. The court dismissed the remaining counts of the counterclaim as moot in light of its ruling on Counts I and II. The City of Portland, the city officials, and the intervenors appeal the judgment, and FWA II appeals that portion of the order dismissing Counts III through VI of its counterclaim as moot.

II.

The novel issue raised by this appeal is whether an ordinance's provision of retroactivity should be given effect in light of 1 M.R.S.A. § 302 (1979), which states in pertinent part:

Actions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby. For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing.

The City of Portland, supported by the

1. The Working Waterfront Coalition's complaint identifies it as a "coalition of several organizations joined to secure the waterfront of the City of Portland for marine-related uses and to stop further residential and non-marine related development on the waterfront." Other parties joining in the Working Waterfront Coalition's complaint were Keep the Port in Portland, Portland West Neighborhood Organization, Inc., Maine Lobsterman's Association, Casco Bay Island Development Association, and several individuals.

Attorney General[2] and the Working Waterfront Coalition,[3] essentially argues that section 302 is a rule of construction, the effect of which can be avoided by the contrary intent embodied in a municipal ordinance. FWA II contends that section 302 is a rule of law that prevents municipalities from retroactively applying newly enacted ordinances to prior pending applications. In its decision, the Superior Court agreed with FWA II stating that the plain meaning of section 302 and the policy considerations found in applicable case law support a conclusion that the provisions of the Portland Zoning Ordinance in effect when FWA II's application was filed and reviewed by City agencies, should govern consideration of the application. We agree with the arguments advanced by the City and its supporters and find the Superior Court's decision to be in error.

We have previously stated that 1 M.R.S. A. § 302 is a "standing rule of statutory construction." *Bank of Maine v. Weisberger*, 477 A.2d 741, 746 (Me.1984). This characterization is firmly grounded in section 302's legislative history, which originated with Chapter 109 of the Public Laws of 1870 entitled: "An act to establish certain rules for the construction of statutes." The act provided in part:

In the construction of all statutes hereafter enacted the following rules shall be observed, *unless such construction would be repugnant to the express terms of the same statute....*

....

Third. Actions pending at the time of the passage or repeal of the act, shall not be affected thereby.

P.L. 1870, ch. 109 (emphasis added). This act indicates the Legislature's intent that statutes be given prospective application absent express statutory intent to the contrary. Although the statute went through changes in its codification[4] and in its statutory development in the century since its enactment,[5] there is nothing in the applicable legislative history to indicate that 1 M.R.S.A. § 302 was intended to be anything other than a general rule of statutory construction.

The Legislature has repeatedly overridden section 302's preference for prospectivity with a clear statement of contrary intent. *See e.g.* 23 M.R.S.A. § 156 (Supp. 1987) ("Notwithstanding Title 1, section 302, this section shall apply to all actions and proceedings pending on the effective

---

**2.** FWA II challenges the Attorney General's participation in this appeal claiming that 14 M.R.S. A. § 5963 (1980) entitles the Attorney General "to be heard" only on the constitutionality of the initiated ordinance and not the applicability of 1 M.R.S.A. § 302 (1979) to the ordinance. Since FWA II did not object below to the Attorney General's intervention or argument of the § 302 issue, it cannot raise this issue for the first time on appeal. *Poire v. Manchester*, 506 A.2d 1160, 1163–64 (Me.1986). Moreover, there is nothing in the language of section 5963 that limits the issues on which the Attorney General may be heard once a party claims that an ordinance or statute is unconstitutional.

**3.** In its order granting the Coalition's intervention under M.R.Civ.P. 24(b), the Superior Court expressly reserved the questions whether the Coalition meets the criterion for intervention as a matter of right under M.R.Civ.P. 24(a), or whether it has standing to sue. Although FWA II questions whether the Coalition has standing in this litigation, it states in its brief that it waives this issue for purposes of this appeal.

**4.** When P.L.1870, ch. 109 was codified in 1871, the two paragraphs set forth in the text *supra* p.

6 were separated. The statement concerning "actions pending" was placed in a section very similar to section 302 as it appears today, and language similar to the introductory paragraph of P.L.1870, ch. 109, appears in another section that specifically refers to rules of construction:

Sec. 3.... Actions pending at the time of the passage or repeal of an act, shall not be affected thereby.

Sec. 4. The following rules are to be observed in the construction of statutes, unless such construction is inconsistent with the plain meaning of the enactment.

R.S.1871, ch. 1, §§ 3, 4.

**5.** The statutory history of 1 M.R.S.A. § 302 (1979) is as follows:

P.L.1870, ch. 109
R.S.1871, ch. 1, § 3
R.S.1883, ch. 1, § 5
R.S.1903, ch. 1, § 5
R.S.1916, ch. 1, § 5
R.S.1930, ch. 1, § 5
R.S.1944, ch. 9, § 20
R.S.1954, ch. 10, § 21
P.L.1967, ch. 10
P.L.1973, ch. 146

date of this Act."); P.L.1985, c. 599, § 4 (making 14 M.R.S.A. § 8102(2–A)(Supp.1987) retroactive to January 31, 1977). We have also recognized the Legislature's authority to make statutes operate retroactively. *See Coates v. Maine Employment Security Comm.,* 406 A.2d 94, 97 (Me.1979). However, FWA II contends and the Superior Court concluded that even though section 302 became applicable to municipal ordinances in 1973, (P.L. 1973, ch. 146), municipalities do not possess the same authority as the Legislature to override section 302's preference for prospectivity with a statement of contrary intent. This argument lacks merit.

■ In implementing Home Rule powers, the Legislature enacted 30 M.R.S.A. § 1917, which provides, in relevant part, as follows:

> Any municipality may, by the adoption, amendment or repeal of ordinances or bylaws, exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution, general law or charter.

30 M.R.S.A. § 1917 (1978). The Legislature clearly has the power to confer upon municipalities the authority to apply municipal ordinances retroactively, and is deemed to have done so by virtue of 30 M.R.S.A. § 1917, absent any express or clearly implied legislative prohibition. We determine that as a rule of construction, section 302 does not expressly or impliedly prohibit municipalities from applying ordinances retroactively. We are also unable to discern the existence of such a legislative prohibition in any other statute. We therefore conclude that since section 302 does not distinguish between statutes and ordinances, it should be applied to retroactivity clauses in municipal ordinances in the same manner that it is applicable to like clauses in the Legislature's enactment of statutes —namely that if either a statute or an ordinance contains a provision of retroactivity, section 302's rule of prospectivity is negated. Consequently, in the instant case, the retroactivity clause of the initi-

ated ordinance is operative and therefore FWA II, having filed its application after the effective date of December 22, 1986, is bound by the provisions of the initiated ordinance.

■ We reject FWA II's additional argument that it relied on existing regulations and municipal approvals to such a degree that it established "vested rights" in its project, and should be allowed to construct and occupy its premises pursuant to the approval it received. Under the criteria we set forth in *Thomas v. Zoning Board of Appeals of the City of Bangor,* 381 A.2d 643 (Me.1978), FWA II has not demonstrated any acquired vested rights that would overcome the application of the initiated ordinance. Neither FWA II's application for, nor the City's issuance of, a building permit provide FWA II with any vested rights. Moreover, no vested rights were acquired as a consequence of the expenses incurred by FWA II in satisfying application requirements. Finally, considering FWA II's knowledge of the contents of the proposed ordinance and its retroactive provisions prior to acquiring title to the property in question, and the lack of any evidence of bad faith or discriminatory treatment by the City or initiated ordinance proponents, FWA II has failed to establish any vested rights based on equitable grounds. *See Id.* at 647.

In conclusion, we hold that the retroactive provision of the initiated ordinance is valid and controlling, and that FWA II acquired no vested rights in its project. Accordingly, we vacate the judgment. Because the Superior Court failed to reach the merits of Counts III through VI of FWA II's counterclaim by dismissing them as moot in light of its ruling, we remand those counts for further consideration by the trial court.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.